

US BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

_____
**United States Bankruptcy Judge**

**Signed September 07, 2010**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| WILLIAM V. GRISHAM, JR., | § | CASE NO. 10-32524-SGJ-7 |
| | § | |
| DEBTOR. | § | |

<u>**MEMORANDUM OPINION IN SUPPORT OF ORDER DENYING APPROVAL OF REAFFIRMATION AGREEMENT**</u>

On August 11, 2010, the court held a hearing to consider a Reaffirmation Agreement entered into between Capital One Auto Finance ("Capital") and William V. Grisham, Jr. (the "Debtor"), which was filed in the above-referenced Chapter 7 bankruptcy case on July 6, 2010. The court ruled that the agreement should be disapproved, pursuant to Section 524(m)(1) of the Bankruptcy Code. The court issued an Order Denying Approval of the Reaffirmation Agreement on August 27, 2010 (the "Order"). Because the judges in this district are observing an increasingly

large number of reaffirmation agreements being pursued in recent times, and since many of these agreements have procedural deficiencies or are otherwise lacking in a basis for approval, the court issues this Memorandum Opinion explaining its analytical process in evaluating the Reaffirmation Agreement in the case at bar. The court hopes this exercise will be helpful to the entire consumer bankruptcy bar in the future.[1]

I. **The Specifics Regarding the Reaffirmation Agreement Before the Court.**[2]

The Reaffirmation Agreement before the court pertains to a 2007 Dodge Truck (Nitro-V6 Utility 4D SLT 2WD). The vehicle is valued at $16,225, according to the Reaffirmation Agreement. The debt that the Debtor proposes to reaffirm is $17,690.59. Thus, from the outset, this court was concerned that the Debtor wished to reaffirm debt on personal property in which there is no equity. The annual percentage rate of interest that applied to the secured vehicle loan was 17.5%. This is obviously quite steep. The monthly payments are $401.80 per month. In the abstract, this monthly payment is not terribly hefty. But the

---

[1] This Memorandum Opinion has been previously circulated to all of the sitting bankruptcy judges in the Northern District of Texas, and they have indicated their support for the analysis and admonitions set forth herein.

[2] This Memorandum Opinion shall constitute the court's findings of fact and conclusions of law in support of the Order. The court has jurisdiction in this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157.

Debtor has 71 more months of these $401.80 per month payments, before the vehicle will be paid off (the Debtor purchased the vehicle less than two months before he filed his bankruptcy case—which explains why there are so many more months left before the vehicle is paid off). Moreover, the Debtor describes himself as "retired/unemployed." The Debtor's only source of income is $1,928 per month of social security income and $1,698 per month of unemployment benefits—the latter of which will soon expire. The Debtor owns no real property and testified that he currently resides rent-free at a relative's home. In addition to his vehicle loan, the Debtor has $29,000 of priority IRS debt, and $75,000 of alimony owed to one of his ex-wives. The Debtor has $170,000 of unsecured debt (and close to $100,000 of this relates to student loan indebtedness). According to the Debtor's Schedules I and J (as well as the cover sheet on his Reaffirmation Agreement), the Debtor's monthly net income, after deducting his living expenses, is a negative $1,091.

## II. The Strict Requirements Generally for Reaffirmation Agreements.

Section 524(c), (d), and (m), and Bankruptcy Rules 4004(c)(1)(J), (K) and (c)(2), and 4008, are the Bankruptcy Code sections and Rules germane to reaffirmation agreements. Any reaffirmation agreement that does not meet the strict requirements of these provisions is unenforceable. These provisions "grew out of a long history of coercive and deceptive

-3-

actions by creditors to secure reaffirmation of discharged debt."
4 COLLIER ON BANKRUPTCY ¶ 524.04, pp. 524-40 (16th ed. 2009).

## III.  Was the Reaffirmation Agreement Timely "Made"?

In considering any reaffirmation agreement, the bankruptcy
court, first, must consult Bankruptcy Code Section 524(c)(1),
which provides that a reaffirmation agreement is only
"enforceable" if "such agreement was **made** before the granting of
the discharge." *See* 11 U.S.C. § 524(c)(1) (2010) (emphasis
added).  Here, the Reaffirmation Agreement was executed by the
Debtor on June 9, 2010, and it was executed by Capital on June
25, 2010.  Thus, the agreement was "made" as of June 25, 2010.
Here, the Debtor had not received a discharge as of the time that
the agreement was "made."  So, initially, there is no bar as to
the enforceability of the agreement under Section 524(c)(1)—as it
was timely "made."

The court notes that, oftentimes, a debtor and creditor do
not execute a reaffirmation agreement prior to the time for entry
of a discharge order.  A discharge order is typically issued by
the clerk's office promptly after the expiration of the time
fixed for filing objections to the debtor's discharge (unless one
of certain types of motions is pending—most notably, a motion to
extend time to object to discharge).  *See* Fed. R. Bankr. P.
4004(c)(1).  ***It is noteworthy that parties who have not executed***
***a reaffirmation agreement at the time that a discharge order is***

-4-

*due to be entered are not without a solution*. Pursuant to
Bankruptcy Rule 4004(c)(2), a debtor may file a motion asking the
court to "defer the entry of an order granting a discharge for 30
days and, on a motion within that [subsequent 30-day] period, the
court may defer entry of the order to a [still-later] date
certain." *See* Fed. R. Bankr. P. 4004(c)(2). *It is critical that
debtors file a motion to defer entry of a discharge order when
they are having delays in finalizing a reaffirmation agreement*.
Pursuant to Bankruptcy Rule 4004(c)(1), the court *shall*
"forthwith grant [a] discharge" in a chapter 7 case after the
time has expired for parties to object to the debtor's discharge.
*See* Fed. R. Bankr. P. 4004(c)(1). After the court has entered a
discharge order, any reaffirmation agreement subsequently "made"
will not be enforceable. Moreover, it is generally not
appropriate for the bankruptcy court to "set aside" a discharge
order for the sole purpose of considering a reaffirmation
agreement, and then thereafter, re-enter a discharge order. *See
generally In re Shires*, No. 07-20156, 2008 WL 2405039, at *2
(Bankr. N.D. Tex. June 9, 2008) and *In re Cox*, No. 07-20374, 2008
WL 2405039, at *2 (Bankr. N.D. Tex. June 9, 2008) (consolidated
Memorandum Opinion of Judge Robert L. Jones, Amarillo Division);
*Winters Nat'l Bank & Trust Co. v. McQuality (In re McQuality),* 5
B.R. 302, 303 (Bankr. S.D. Ohio 1980) (a bankruptcy court should
not vacate a discharge order that has already been entered so

that a reaffirmation agreement can be entered into before a discharge is granted).

## IV. Was the Reaffirmation Agreement Timely "Filed"?

In considering any reaffirmation agreement, the bankruptcy court, next, must consider whether it was timely "filed." Pursuant to Bankruptcy Rule 4008(a), "A reaffirmation agreement shall be *filed* no later than 60 days after the first date set for the meeting of creditors." *See* Fed. R. Bankr. P. 4008(a) (emphasis added). Here, the Reaffirmation Agreement was filed on July 6, 2010. The first date set for the meeting of creditors in the case was May 18, 2010. Thus, the Reaffirmation Agreement was timely filed within 60 days after May 18, 2010.

Similar to what the court mentioned above, oftentimes, a debtor and creditor do not "file" a reaffirmation agreement within 60 days after the first date set for the meeting of creditors. In such situations, the parties are (again) not without a solution. Pursuant to Bankruptcy Rule 4008(a), "[t]he court may, at any time and in its discretion, enlarge the time to *file* a reaffirmation agreement." *Id*. (emphasis added). Thus, a debtor or creditor may, at any time, file a motion to enlarge the time to file a reaffirmation agreement. Technically, the court has the power to enlarge the time to *file* a reaffirmation agreement without a motion even being made.

Note that, pursuant to Bankruptcy Rule 4004(c)(1)(J), a court shall **not** grant a discharge whenever a motion to enlarge the time to file a reaffirmation agreement is pending under Rule 4008(a). *See* Fed. R. Bankr. P. 4004(c)(1)(J). Thus, in a perfect world, a "red flag" is raised in a bankruptcy clerk's office, whenever a motion to enlarge time to file a reaffirmation agreement is filed in a bankruptcy case, to halt the entry of a discharge order. It is important that the discharge order be halted, since the court may be required to hold a hearing on the reaffirmation agreement before a discharge is granted (as explained in Part VI below).

## V.  Did the Reaffirmation Agreement Require a Hearing, and Why?

The court, as mentioned, set a hearing on the Reaffirmation Agreement in the above-referenced case. While this particular Reaffirmation Agreement required a hearing, the court is not always required to set a hearing on a reaffirmation agreement. There seems to be some confusion regarding this point. When is a hearing required? There are at least a couple of situations in which the bankruptcy court will typically need to set a hearing on a reaffirmation agreement.

### A.    The Unrepresented Debtor.

First, the most obvious situation in which there is a need for a court hearing is when the debtor "was not represented by an attorney during the course of negotiating" the reaffirmation

agreement. *See* 11 U.S.C. § 524(c)(6)(A) (2010). In such situations, the reaffirmation agreement will not be enforceable unless the court approves it as not imposing an "undue hardship" on the debtor or his dependents **and** as being in the debtor's "best interest."

The court notes, anecdotally, that it is dismayed that sometimes reaffirmation agreements are filed in this court without a declaration or affidavit of a debtor's counsel, even though the debtor has not proceeded *pro se* in the case. In other words, sometimes debtors who hired and paid for attorneys to represent them in their chapter 7 cases nevertheless do not have assistance from their counsel in negotiating reaffirmation agreements. Therefore, the court is required to set the reaffirmation agreements for hearing, so that the court can: (a) make the findings required by Section 524(c)(6) that the reaffirmation agreements are in the best interests of the debtors and do not impose an undue hardship; (b) inform the debtors of the information set forth in Section 524(d) (*i.e.,* the legal effect and consequences of a reaffirmation agreement); and (c) determine whether the court should approve the reaffirmation agreements. The reaffirmation agreements will not be enforceable otherwise, in light of debtors' counsel not signing them and making certain declarations. Many times, if a debtor's counsel had only signed a reaffirmation agreement—specifically, signed

the declaration described in Section 524(c)—the court would not have been required to hold a hearing, and the debtor would not have been required to go to the trouble of traveling downtown to the courthouse to attend such hearing.  Indeed, it would add quite a large burden to the bankruptcy system if the court were always required to hold a hearing each and every time a reaffirmation agreement is filed with the court.

The court believes that this type of attorney-behavior is unacceptable.  ***It should be considered a basic part of chapter 7 debtor-representation that an attorney advise his client as to something as fundamental and significant as a reaffirmation agreement and assist him in negotiation of the same***.  The court has heard some attorneys state that "they do not feel comfortable signing a reaffirmation agreement if they do not believe it is in the client's best interest."  As a trusted advisor, one would hope that most of the time, an attorney could impress upon his client not to do something that is not in the client's best interest (so, "reaction number one" is "try harder" to persuade the client).[3]  But the court further notes that the form reaffirmation agreement technically does not seem to require a certification by the attorney of the agreement being in the best

---

[3] *See* Tex. Disciplinary Rules of Prof'l Conduct 2.01 (entitled "Advisor," this rule provides that "[i]n advising or otherwise representing a client, a lawyer shall exercise independent professional judgment and render candid advice").

interest of the debtor, *per se*.  It only contains a certification that the reaffirmation agreement represents "a fully informed and voluntary agreement by the debtor;" does not impose an "undue hardship" (or alternatively, there is a box to check if it does present a presumption of an undue hardship); and that the debtor's attorney has "fully advised the debtor of the legal effect and consequences" of the agreement and any default thereunder.  This court sees plenty of attorneys sign reaffirmation agreements and (if the presumption of undue hardship is triggered) show up with their clients in court and, basically, explain the situation to the court—and maybe even explain that the attorney did not personally believe the reaffirmation agreement was in the client's best interest—but the attorney is nevertheless in court to assist the client since the client wants to reaffirm.  This latter approach is certainly the more ethical and honorable course of action for a debtor's attorney.

   **B.    The Presumption of Undue Hardship is Triggered.**

   The second situation in which there is a need for a hearing on a reaffirmation agreement is when the presumption of undue hardship is triggered.  This is why the court set a hearing in the case at bar.

   There is a section in the form reaffirmation agreement (Section II of Official Form 27) for a debtor to list all of his

monthly income and then all of his monthly expenses, including
all reaffirmed debt except the debt subject to the reaffirmation
agreement.  The difference between income and these expenses will
be considered the debtor's monthly net income.  If this number is
negative, or less than the monthly payment for the proposed
reaffirmed debt, then the so-called "presumption of undue
hardship" is triggered, and there is a box on the reaffirmation
agreement form that should be checked (at the top of the first
page of the reaffirmation agreement, reading "Presumption of
Undue Hardship").  If the number is positive, then the box that
reads "No Presumption of Undue Hardship" should be checked.  This
is fairly simple math.  *See* 11 U.S.C. § 524(m) (2010) (where this
simple-math concept is codified, specifically that ". . . it
shall be presumed that such agreement is an undue hardship on the
debtor if the debtor's monthly income less the debtor's monthly
expenses as shown on the debtor's completed and signed statement
in support of such agreement . . . is less than the scheduled
payment on the reaffirmed debt. . .").

In the case at bar, there was "negative math" and the
attorney involved correctly checked the box on page one of the
Reaffirmation Agreement for "Presumption of Undue Hardship."  So
the court set the Reaffirmation Agreement for hearing.  But this
court is extremely perplexed as to why *very* frequently attorneys
check the wrong box or do not check a box at all.  In other

words, there will be negative math, but nevertheless the "*No Presumption of Undue Hardship*" box is checked.  Or, somehow, folks "forget" to check either one of the boxes.

The court has heard some attorneys say that if the math is "barely" negative, or if they have heard solid explanations from their clients regarding the ability to make the payment on the reaffirmed debt (*i.e.,* "a relative is now living with the debtor and is going to help"), then they believe they have the *discretion* to check the "*No* Presumption of Undue Hardship" box.  Wrong.  The *discretion is the court's*, not the attorney's.  If there is negative math, then the "Presumption of Undue Hardship" box must be checked.  There are places on the reaffirmation agreement form in which a lawyer/debtor may explain "sources of funds available to the Debtor to make the monthly payments on the reaffirmed debt" (page 2 of the reaffirmation agreement), and that is where an explanation may be given to the court to explain such things as a new part-time job, a salary increase after filing the debtor's initial schedules, help from a relative, or other circumstances that the debtor believes overcome the presumption of undue hardship.  *The court observes that debtors and their attorneys are typically very lean with their explanations on the reaffirmation agreements.*  If attorneys would be more thorough (and perhaps even attach documentary proof), the court might be inclined to rule that the presumption of undue

-12-

hardship has been overcome in many situations, even without a hearing/live testimony.[4]

### C.  Irregularities with Box-Checking or the "Math" on a Reaffirmation Agreement.

As described above, the court is generally going to set a hearing if:  (1) there is an unrepresented debtor, or (2) a presumption of undue hardship is triggered.  However, a simple audit in the bankruptcy clerk's office of reaffirmation agreements for the existence of:  (1) an attorney's signature, or (2) the "Presumption of Undue Hardship" box being checked may no longer be adequate, it seems to this court.  To further clarify, *because the court has recently observed frequent inaccuracies in checking the correct box for presumption of hardship, the court is looking more carefully at reaffirmation agreements.*  Usually, the court is going to scrutinize the math and set a reaffirmation agreement for a hearing when the math is "negative" *regardless* of whether the debtor/attorney has checked the correct box indicating there is a presumption of undue hardship.  Or, the court may set the reaffirmation agreement for hearing when the math is positive *now*, but was negative at the time the debtor filed his Schedules I and J (often, miraculously, the debtor has much more income and far fewer expenses, say 80 days after he

---

[4] In the case at bar, the Debtor merely indicated he would be working with an ex-wife to reduce alimony and was seeking employment.

filed his case and filed his Schedules I and J; sometimes there is a good explanation, and sometimes there is not).  In this regard, the court urges debtors and their counsel to be candid. Be careful.  The incorrect box-checking is very disturbing and happens all-too-frequently.[5]  *See In re Melendez*, 224 B.R. 252, 261 (Bankr. D. Mass. 1998) (attorney declaration is subject to Rule 11 "reasonable inquiry under the circumstances" requirement).

## VI.  Timing for a Hearing on a Reaffirmation Agreement.

Section 524(m)(1) and Bankruptcy Rule 4004(c)(1)(K) should be consulted to understand the timing concerns that underlie setting a hearing on a reaffirmation agreement where the undue hardship presumption has been triggered (such as in the case at bar).

Section 524(m)(1) provides that any hearing in which the court is going to consider approval/disapproval of a reaffirmation agreement, where the undue hardship presumption has been triggered, "shall be concluded before the entry of the debtor's discharge."  *See* 11 U.S.C. § 524(m)(1) (2010).  But the timing issues are slightly more complicated than simply holding the hearing before the discharge order is potentially entered.

---

[5]  *See* Tex. Disciplinary Rules of Prof'l Conduct 3.03 (entitled "Candor Toward the Tribunal," this rule provides that "(a) A lawyer shall not knowingly: (1) make a false statement of material fact or law to a tribunal . . .").

Section 524(m)(1) contemplates that whenever the math is negative (*i.e,* whenever the debtor's monthly income less the debtor's monthly expenses is less than the scheduled payments on the reaffirmed debt), there shall be a presumption of undue hardship.  But there is actually a finite time frame for this presumption to remain in effect.  **The presumption remains in effect for 60 days after the agreement is filed "(or such additional period as the court, after notice and a hearing and for cause, orders before the expiration of such period)."** *Id.* Additionally, Section 524(m)(1) requires that the presumption "shall be reviewed by the court."  Moreover, the debtor may attempt in the reaffirmation agreement to rebut the presumption with a written statement explaining additional sources of funds, but if "the presumption is not rebutted to the satisfaction of the court, the court may disapprove such agreement."  *Id.* Section 524(m)(1) finally goes on to add that "[n]o agreement shall be disapproved without notice and a hearing to the debtor and creditor."  *Id.*

Read all together, these provisions mean:  (a) the court has a statutory obligation to review reaffirmation agreements where a presumption of undue hardship has been triggered; (b) the court needs to engage in its statutory review within 60 days of when the reaffirmation agreement is filed because the presumption expires after 60 days (unless the court, within the 60 days,

extends that time frame, with notice and a hearing and for
cause); and (c) in theory, the court could be satisfied that the
debtor has rebutted with a good written explanation the
presumption of undue hardship and not set a hearing (and the
presumption would expire after 60 days after the filing of the
agreement and, presumably, the agreement would be enforceable).
In reality, the court is rarely satisfied with the written
explanation of the debtor, so the court must hold a hearing on
notice in order to decide whether to disapprove the
agreement—and, again, the hearing on possible disapproval shall
be held before the discharge.

Once again alluding to a perfect world, a "red flag" should
go up in a bankruptcy clerk's office, whenever a presumption of
undue hardship is triggered. *See* Fed. R. Bankr. P. 4004(c)(1)(K)
(describing how the court shall not grant a discharge when "a
presumption has arisen under § 524(m) that a reaffirmation
agreement is an undue hardship"). Once again, the court stresses
the importance of checking the correct box. If the correct box
is checked showing a presumption of undue hardship, then the red
flag can go up signaling the clerk's office to stop the discharge
temporarily in order to give the court time to review the
presumption. But if the wrong box is checked, there is not
necessarily the signal to the clerk that a discharge needs to be
halted to enable the court to review the presumption of undue

hardship.  The system does not work as smoothly as it should when parties do not honestly check the correct box.  **The court may or may not ultimately conduct the statutory review that Congress requires it to engage in when parties do not check the correct box and this, no doubt, calls into question the enforceability of the reaffirmation agreements.**[6]

---

[6] The court would be remiss if it did not mention that there are **two special exceptions** that impact the general protocol for reaffirmation agreements described herein:

A.    **Special Rules for Credit Unions.**  With regard to credit unions, the undue hardship presumption is irrelevant.  *See* 11 U.S.C. § 524(m)(2) (2010).  This means that **if** an attorney is involved, and the presumption of undue hardship is technically triggered (because of negative cash flow) there is **no need** to set a hearing.  However, again, if **no** attorney is involved and personal property is involved, the court will still set the reaffirmation agreement for hearing to consider the sole question of whether the reaffirmation agreement with the credit union is in the "best interest" of the debtors (again, the undue hardship presumption is irrelevant).  *See In re Moustafi*, 371 B.R. 434, 438 (Bankr. D. Ariz. 2007) (declining to approve a reaffirmation agreement with a credit union where it was not in the debtor's best interest).  *See also In re Donald*, 343 B.R. 524, 526 (Bankr. E.D.N.C. 2006) (without reference to section 524(m), the sole question before the court on approval of a reaffirmation agreement with a credit union was whether the agreement was in the best interest of the debtors).

B.    **Special Rules for Homesteads.**  As for homesteads, it appears to be the opposite of credit unions.  In other words, it appears that only the "undue hardship" analysis is necessary, but not the "best interest" analysis.  *Compare* 11 U.S.C. § 524(c)(6)(B) (2010), *with* 11 U.S.C. § 524(m) (2010).  This means that **if** an attorney is involved and the presumption of undue hardship is technically triggered (because of negative cash flow), there **is** indeed a need to set a hearing.  But the sole question at the hearing should be whether the reaffirmation agreement imposes an undue hardship (again, "best interest" of the debtor is irrelevant).  Some authority suggests that a hearing and court approval is never necessary in the case of a homestead.  *See generally* 4 COLLIER ON BANKRUPTCY ¶ 524.04, pp. 524-41 (16th ed. 2009) (simply citing 11 U.S.C. § 524(c)(6)(B)).  In this court's view, this position may overlook the more specific provisions of 11 U.S.C. § 524(m) which were added by the Bankruptcy Abuse

## VII. Grounds for Disapproving the Reaffirmation Agreement in the Case at Bar.

Returning to the case at bar, the proper procedures were all correctly followed.  The agreement was "made" timely.  It was "filed" timely.  The attorney candidly and correctly checked the "presumption of undue hardship" box because of the negative math. Thus, the red flag went up in the clerk's office, halting the entry of a discharge, pursuant to Bankruptcy Rule 4004(c)(1)(K), so that the court could timely undertake its statutorily required review of the reaffirmation agreement.  The court set a hearing and concluded the hearing before a discharge order had been entered.

Be that as it may, the court could not find that the presumption of undue hardship had been overcome in this situation, so the Reaffirmation Agreement is disapproved.  As described in Part I above, the Reaffirmation Agreement pertains to a 2007 Dodge Truck in which the Debtor has no equity.  The interest rate applicable to the secured debt is 17.5%.  The Debtor has 71 more months of payments on the vehicle.  Moreover,

---

Prevention and Consumer Protection Act of 2005.

Because of the two special rules set forth above, it would appear that if a debtor is proposing to reaffirm debt on his homestead and a credit union is the creditor, then *no hearing will ever be necessary* whether or not an attorney represented the debtor, and whether or not the presumption of undue hardship is triggered by negative math, because, in this scenario, both the "undue hardship" and "best interests of debtor" analyses are irrelevant.  *See* 11 U.S.C. § 524(c)(6)(B), (m) (2010).

the Debtor's only current source of income is government
assistance—a major portion of which will soon expire.  While the
monthly payments on the vehicle are not eye-popping ($401.80 per
month), for this Debtor, in his current situation, it is unduly
burdensome.  In particular, this Debtor is burdened with several
obligations that will likely survive his discharge in bankruptcy
(large IRS debt; large alimony; and large student loan debt).
Finally, the court heard no compelling testimony to justify why
the Debtor purchased his vehicle right before filing bankruptcy
(sometimes this may be defensible and sometimes not).

     In summary, the court will not stamp its seal of approval on
the Debtor's reaffirmation of the debt.  To do so would create a
hardship on this Debtor and does not otherwise seem justified.

**VIII.  Conclusion.**

     It would be hard for anyone to deny that Section 524 of the
Bankruptcy Code—the statute describing the process for
reaffirmation of debt—is one of the most unwieldy and cumbersome
provisions applicable to consumer bankruptcy cases.  Section 524
makes for painful reading.  In addition to the items discussed in
this opinion, there are lengthy disclosures and other
requirements in Section 524 that must be adhered to for a
reaffirmation agreement to be enforceable.  Moreover, the
official form for a reaffirmation agreement has been modified
numerous times over the years.  Thus, on balance, it is not

-19-

terribly surprising that compliance with this Code section (and the accompanying rules) is frequently woefully deficient. The court hopes that this Memorandum Opinion provides a resource in the future for those struggling with proper protocol in the area of reaffirmation agreements.

The court also hopes that the thought-process that this court shared, regarding the above-referenced Debtor (and, specifically, why the court would not approve his Reaffirmation Agreement), is useful. Bankruptcy is about "fresh starts" and new beginnings. It is about belt-tightening and shedding past bad habits. Too often, a reaffirmation agreement will reveal that someone just does not comprehend this, and wants to go forward in a manner that will impair his fresh start and perpetuate bad habits from the past.

The court realizes that this is sometimes complicated. In a context in which a debtor does not enter into a reaffirmation agreement during a chapter 7 case regarding a debt-encumbered vehicle, there are probably situations in which a vehicle-lender will repossess the debtor's vehicle post-discharge, even when the debtor is making regular and timely contractual payments for the car post-discharge—for the simple reason that the debtor did not "reaffirm." This court has heard intellectual pontificating regarding the legal propriety of such an action by a lender. It would appear that Sections 521(a)(6) and (d), combined with

-20-

Section 362(h)(1)(A) and (j), may have ended the intellectual debate about this, and may allow such a course of action (at least from a Bankruptcy Code standpoint)—except for, perhaps, in a case in which the debtor *entered* into a reaffirmation agreement but such agreement was nevertheless not approved by the court. *See* 11 U.S.C. § 521(a)(6), (d) (2010).[7]  Thus, the court can understand why a debtor and his counsel might see the wisdom of *entering* into a reaffirmation agreement, even if they can envision the court may never approve it because of the negative math.  Perhaps they imagine that this will help the debtor with the car lender post-discharge, if they at least *tried* to get the reaffirmation agreement approved with the court.  Moreover, perhaps the debtor genuinely needs a car and worries that, absent an attempt at a reaffirmation agreement, he will surely lose the car post-discharge and may not be able to purchase (*i.e.,* obtain financing) for another vehicle in the near future.

Again, the court is not unsympathetic and realizes this can all be very complicated.  The court realizes that we are in a world where car lenders may not always act like economically rational animals.  And, the court appreciates that car lenders may sometimes have their own economic pressures with which to contend.  But, again, the fresh start is the overriding purpose

---

[7] *See also Ford Motor Credit Co. v. Baker (In re Baker),* 400 B.R. 136, 139 (D. Del. 2009).

of a chapter 7 bankruptcy case.   Many reaffirmation agreements presented to the court are the farthest thing from a "fresh start" that one could ever imagine.   Many times it is time to say "good riddance" to the car.   And many times—maybe, just maybe—a car lender will see the wisdom of renegotiating a car loan if reaffirmation is denied.

Accordingly,

**IT IS ORDERED** that the Reaffirmation Agreement between the Debtor and Capital is disapproved.

###END OF ORDER###